```
               UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS


PATRICIA EILLEEN CAIN,
     Plaintiff,
                                       CIVIL ACTION NO.
     v.                                16-12163-IT

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,
     Defendant.
```

### REPORT AND RECOMMENDATION RE:
**PLAINTIFF'S MOTION FOR ORDER REVERSING THE DECISION OF THE COMMISSIONER (DOCKET ENTRY # 23); DEFENDANT'S MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER (DOCKET ENTRY # 27)**

**October 24, 2017**

**BOWLER, U.S.M.J.**

Pending before this court are cross motions by the parties, plaintiff Patricia Eilleen Cain ("plaintiff") and defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("the Commissioner"). Plaintiff seeks an order reversing the decision of the Commissioner (Docket Entry # 23) whereas the Commissioner moves to affirm the reduction of spousal benefits under 42 U.S.C. § 405(g). (Docket Entry # 27).

<u>PROCEDURAL BACKGROUND</u>

On May 11, 2012, plaintiff filed a request for reconsideration with the Social Security Administration ("SSA") disputing its decision to reduce plaintiff's spousal benefits. (Tr. 13). On March 13, 2013, the agency affirmed its decision, which required a reduction of plaintiff's benefits by $89.90 per

month beginning October 2006.  (Tr. 13, 22).  On February 28, 2014, at plaintiff's request, an Administrative Law Judge ("ALJ") held a hearing at which plaintiff testified.  (Tr. 19).  At the hearing, plaintiff waived her right to representation.  (Tr. 19).  On June 23, 2014, the ALJ issued a decision, finding that plaintiff received a pension that was subject to a Government Pension Offset ("GPO")[1] thereby reducing plaintiff's Social Security spousal benefits pursuant to section 202(k)(5) of the Social Security Act, 42 U.S.C. § 402.  (Tr. 13-18).  On August 22, 2016, the Appeals Council denied plaintiff's request for review thereby rendering the ALJ's decision as the final decision of the Commissioner.  (Tr. 3-4).

## FACTUAL BACKGROUND

Plaintiff worked at Northern Essex Community College ("NECC") as a part-time adjunct instructor from September 1993 to December 2005.  (Tr. 53).  NECC is part of the Commonwealth's system of public institutions of higher education.  See Mass. Gen. Laws ch. 15A, § 5.  As a part-time employee, however, she was not eligible to participate in the Massachusetts State

---

[1]  The GPO is a provision that "applies to a spouse's Social Security benefit for any month the spouse receives a pension **based upon his or her own government employment not covered under Social Security**."  Social Security Administration Program Operations Manuel Systems (POMS), https://secure.ssa.gov/poms.nsf/lnx/0202608100 ("POMS 02608.100") (emphasis in original).

Employee Retirement System ("MSERS").  (Tr. 53); 807 C.M.R. § 3.04.  For part-time employees, the Commonwealth provides a plan known as the Massachusetts Deferred Compensation SMART Plan ("SMART Plan").  (Tr. 56).  During her employment at NECC, plaintiff made payments into the SMART Plan and had a balance of $15,521.86 at the time she left NECC in December 2005.  (Tr. 19, 53).  In December 2011, she requested and received a lump sum payment of the full balance in her SMART plan account, which totaled $14,945.07 after taxes.  (Tr. 26, 50).  The Great-West Life & Annuity Insurance Company ("Great-West") issued the check for the plan.  (Tr. 50).  The Great-West check identified plaintiff's plan as the Massachusetts Deferred Compensation SMART plan with an accompanying plan number, 98966-02.  (Tr. 91-93).[2]

An information guide from the Office of the State Treasurer of the Commonwealth of Massachusetts describes the SMART plan as "an alternative to Social Security as permitted by the federal Omnibus Budget Reconciliation Act of 1990" ("OBRA").  (Tr. 22, 56).  As noted in the information guide, when an employee is "not eligible to participate in [the] employer's retirement program," i.e., a part-time employee such as plaintiff with

---

[2]  The Massachusetts Deferred Compensation Smart Plan Mandatory OBRA plan number, 98966-02, is found on plaintiff's investment performance reports as of January 31, 2014.  (Tr. 91-93).

3

respect to MSERS, the employee is "placed in Social Security or another program meeting federal requirements." (Tr. 56). "The SMART Plan meets those federal requirements," according to the information guide. The payroll and benefits department at NECC likewise describes the SMART Plan as "an alternative to Social Security." (Tr. 53). The SMART Plan required the employee to contribute at least 7.5% of his or her gross earnings, according to the guide, and plaintiff acknowledges she made contributions to the plan during her employment at NECC. (Tr. 19, 56).

Meanwhile, plaintiff became entitled to Social Security spousal benefits in October 2006. (Tr. 13). By letter dated March 6, 2012, shortly after the December 2011 lump sum payment, the SSA's Northeastern Program Service Center ("the Center") asked plaintiff for information regarding the SMART Plan. Plaintiff answered the questionnaire by stating that she contributed to the SMART Plan and the plan was her primary retirement plan. (Tr. 19-20). By letter dated April 9, 2012, the Center notified plaintiff that her spousal benefits would be reduced by $89.90 beginning October 2006 because the SMART Plan is subject to the GPO. (Tr. 22). Because the SSA had not made any deductions, the notice further advised plaintiff of the SSA's overpayment of spousal benefits for the October 2006 to March 2012 time period in the amount of $5,928 and informed her that, if the SSA did not receive repayment within 30 days,

plaintiff's benefits would be withheld. (Tr. 27). As stated in the notice, if plaintiff repaid the $5,928 overpayment, she would begin receiving $329.00 in benefits. (Tr. 40).

A year later in a notice dated March 17, 2013, the Center informed plaintiff that the overpayment totaled $6,008 and reiterated that it was reducing plaintiff's monthly benefit by $89.90 to $329.00 beginning in April 2012. (Tr. 36). The letter also advised plaintiff that she needed to refund the $6,008 overpayment to avoid the agency withholding the entire monthly spousal benefit until it was paid. (Tr. 36).

In or around April 2013, plaintiff repaid the $5,928 overpayment for the October 2006 to March 2012 time period set out in the April 9, 2012 notice. (Tr. 100). An April 15, 2013 letter from the Center acknowledged the agency's receipt of the $5,928 repayment. (Tr. 100). Continuing to adhere to the GPO, however, the Center informed plaintiff she would continue receiving the $329, reduced monthly spousal benefit. (Tr. 100).

## DISCUSSION

I. Jurisdiction and Standard of Review

The court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding the case for a hearing. 42 U.S.C. § 405(g). A district court's review of the Commissioner's final decision is limited to whether the decision that plaintiff's SMART plan is subject to the GPO provision is

supported by substantial evidence. Schneyer v. Colvin, 578 F. App'x 677, 678 (9th Cir. 2014) (unpublished); Perretta v. Colvin, No. 14-CV-2506-RBK, 2015 WL 1808509, at *4 (D.N.J. April 21, 2015) (examining whether plaintiff's "Divorced Spouse Insurance Benefits" were subject to the GPO). Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Clifford v. Sullivan, No. 92-2029, 1993 WL 118836, at *4 (10th Cir. April 15, 1993) (affirming lower court's rejection of equal protection challenge to GPO offset) (unpublished). The SSA's interpretation is given controlling weight unless it is "arbitrary, capricious, [or] an abuse of discretion." Perretta v. Colvin, No. 14-CV-2506-RBK, 2015 WL 1808509, at *5.

II. Analysis

In seeking to reverse the Commissioner's decision, plaintiff argues that the ALJ erred in concluding that plaintiff's SMART plan was a "pension" subject to the GPO. Plaintiff sets out two arguments: (1) her SMART Plan is not a "pension" under the GPO; and (2) under the recommendations of the United States Government Accountability Office ("GAO"), the SMART Plan does not qualify as a pension. (Docket Entry # 24, pp. 4-5). The Commissioner moves to affirm the decision and maintains that the ALJ's determination that plaintiff's SMART Plan was a pension subject to the GPO is correct.

The GPO provision has been part of the Social Security Act since 1977. Heckler v. Mathews, 465 U.S. 728, 731-732 (1984). The provision "reduces the monthly spouse's benefit to an individual who also receives a *pension* for *non-covered work*." Parker v. Colvin, 640 F. App'x 726, 728-730 (10th Cir. 2016) (emphasis added) (unpublished); see 42 U.S.C. § 402(k)(5)(A); 20 C.F.R. § 404.408a(a) ("[w]e will reduce your spouse's benefit for each month you receive a government *pension* based on *noncovered* employment") (emphasis added). "Noncovered employment" is any "Federal, *State*, or local government *employment* that Social Security did not cover and for which [an individual] did not pay Social Security taxes." 20 C.F.R. § 404.408a(a)(1)(ii) (emphasis added). Plaintiff was employed at NECC, which is expressly one of several "public institutions of higher education" in Massachusetts. Mass. Gen. Laws ch. 15A, § 5. Because plaintiff was employed at a Massachusetts public institution of higher education, she worked in "state" government within the meaning of 20 C.F.R. § 404.408a(a)(1)(ii). See Mass. Gen. Laws ch. 15A, § 5. As a part-time employee, she was required to participate in the SMART plan and paid into the plan in lieu of Social Security from September 1993 to December 2005. (Tr. 53, 56). For purposes of the GPO, because plaintiff was employed by a state government and did not pay Social

Security taxes, her work for NECC constituted "noncovered employment"  20 C.F.R. § 404.408a(a)(1)(ii).

The issue therefore reduces to whether plaintiff "receive[d] a government pension" based on her noncovered, state government employment at NECC.  See 20 C.F.R. § 404.408a(a)(2) (SSA will reduce spousal benefits for each month "you receive a government pension based on noncovered employment").  "A pension is a periodic or lump sum payment received from an employer's retirement" plan.  (Tr. 32); POMS 02608.100.[3]  When the "payment is made in a lump sum, proration applies as though" the employee received the lump sum "monthly over a lifetime."  POMS 02608.100; accord 20 C.F.R. § 404.408a (if "government pension is not paid monthly or is paid in a lump sum," pension is determined as if paid monthly and monthly spousal benefit is reduced accordingly); Wicks v. Colvin, 573 Fed. Appx. 803, 808 (10th Cir. 2014) (where the plan did "not itself prorate the

---

[3]  The SSA's policy guidelines are provided in POMS, which is "'a set of policies issued by the agency "to be used in processing claims."'"  Ramey v. Reinertson, 268 F.3d 955, 964, n.2 (10th Cir. 2001) (quoting McNamar v. Apfel, 172 F.3d 764, 766 (10th Cir. 1999)) (internal brackets omitted).  Further, the POMS represents "the agency's own interpretation of its regulations and the statutes governing its operations."  Lopes v. Dep't of Soc. Servs., 696 F.3d 180, 186 (2d Cir. 2012).  POMS are "entitled to deference unless they are arbitrary, capricious, or contrary to law."  See McNamar v. Apfel, 172 F.3d at 766; see also Wicks v. Colvin, Civil Action No. 12-01510-RBJ, 2013 WL 6057986, at *7, n.6 (D. Colo. Nov. 12, 2013).  Here, POMS 02608.100 is an interpretation by the SSA of its own regulation, 20 C.F.R. § 404.408a.

lump sum to establish a monthly amount for GPO purposes, the Agency prorates it in accordance with its POMS guidelines") (unpublished).

In the case at bar, plaintiff received a lump sum payment of the balance in her SMART plan of $14,945.07 in December 2011. (Tr. 26, 50). She therefore received a "pension" in the form of the lump sum payment from the SMART plan. See POMS 02608.100 ("[a] pension is a periodic or lump sum payment received from an employer's retirement plan").

Plaintiff nevertheless contends that the SMART plan does not meet the GPO definition of a "pension" because her employer never contributed financially to her SMART plan. As noted above, under the GPO, a "pension" is "a periodic or lump sum payment received from an employer's retirement" plan." POMS 02608.100. "The payment can be from either a defined benefit or defined contribution plan . . .." POMS 02608.100. Under POMS 02608.400A, another SSA program statement interpreting 20 C.F.R. § 404.408a, payments from a defined benefit plan or a defined contribution plan "based on earnings from non-covered government employment are pensions subject to GPO regardless of the source of contributions (employer only, *employee only*, or a combination of both), if the plan is the employee's *primary retirement plan*." POMS 02608.400A (emphasis added). The fact that NECC

9

never contributed to plaintiff's SMART plan does not preclude the plan's status as a pension because the contributions could be and were "employee only."  POMS 02608.400A.  The SMART plan is also plaintiff's "primary retirement plan" because she affirmatively stated that the plan was her primary retirement plan to the SSA in answering the March 6, 2012, questionnaire. (Tr. 19).

Plaintiff also submits that the SMART plan was "not maintained, organized or supervised by the Commonwealth of Massachusetts" because a "private, third party," presumably Great-West, handled "all payments, account management, and investments."[4]  (Docket Entry # 24).  The plain language of the statute, 42 U.S.C. § 402(k)(5)(A), and the regulations, 20 C.F.R. § 404.408a(a)(1)(i), (ii), however, do not require a government entity to have authority over a plan for it to constitute a pension subject to the offset.  Instead, the language of the statute and the regulations require that the individual must have received the plan's benefits based on employment with a government entity.  See 42 U.S.C. §

---

[4]  In connection with the above argument, plaintiff further contends that "no retirement payments were made directly to the Plaintiff's plan by a government agency or entity." (Docket Entry # 24).  For reasons stated earlier, the absence of a retirement payment by the state agency into the plan does not preclude its status as a pension where, as here, plaintiff made contributions and the plan was plaintiff's primary retirement plan.

10

402(k)(5)(A); 20 C.F.R. §§ 404.408a(a)(1)(i), (ii). Here, plaintiff received $14,945.07 from her SMART plan, which is a plan offered to eligible part-time employees of the Commonwealth of Massachusetts, while working at NECC.

In any event, the premise of plaintiff's argument, i.e., that the Commonwealth did not maintain or supervise the SMART plan is incorrect. It is true that Great-West made the $14,945.07 payment to plaintiff. The notice accompanying the payment, however, identified the plan at issue as "Plan Number: 98966-02," i.e., the SMART plan. (Tr.50).[5] Moreover, the fact that Great-West made the payment does not alter or override the fact that the Smart plan is a Massachusetts state government plan for part-time state government employees such as plaintiff. See Mass Gen. Laws ch. 15A, § 5; 20 C.F.R. § 404.408a(a)(1).

Plaintiff next asserts that her SMART Plan was not "a *periodic or lump sum benefit* that was payable [sic] because she qualified for a retirement benefit based upon her *age and length of service* at NECCO [sic]." (Docket Entry # 24) (emphasis in original). As plaintiff points out, a pension plan can be "characterized as either a defined benefit or defined contribution plan." (Docket Entry # 24). The applicable regulations, however, do not require that the SMART Plan be

---

[5]  See footnote two and related text.

based on the age and length of service factors in order to be subject to the GPO.  See 20 C.F.R. § 404.408a(a)(1)(ii).  Instead, for purposes of the offset provision, the operative factor is whether the plan was based on noncovered employment for which plaintiff received a "pension" in the form of a lump sum payment from her primary retirement plan.  See 20 C.F.R. 404.408a(a); POMS 02608.400A.

    Finally, plaintiff maintains that "under the recommendations of the GAO, the SMART plan does not qualify as a pension."  (Docket Entry # 24).  To support the argument, she quotes language describing both a defined benefit plan and a defined contribution plan and identifies each as a pension plan.  (Docket Entry # 24).  A "defined benefit plan" is centered on a formula based on factors like age and years of service, while a "defined contribution plan" is one in which the benefit is based only on the amount contributed to the account.  26 C.F.R. § 1.401(a)(4)-12. Plaintiff argues that her SMART Plan was based on "an amount calculated upon certain conditions such as age, earnings and length of service rather than the amount the employee paid . . .."  (Docket Entry # 24).  The factual record does not support argument.  Rather, substantial evidence supports the ALJ's determination that her SMART Plan was based on her employee-only contributions and was her primary retirement plan.  Her SMART plan was thus a defined contribution

12

plan, which is based on earnings from noncovered government employment and is subject to the GPO where, as here, the pension plan is considered the individual's primary retirement plan. POMS 02608.400A.  As already noted, plaintiff acknowledged and the ALJ found that her plan was her primary retirement account. (Tr. 16, 19).  Finally, substantial evidence also supports the ALJ's decision that plaintiff's SMART plan is a state government pension that is subject to the GPO.  See 42 U.S.C. § 402(k)(5); 20 C.F.R. § 404.408a.

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[6] that the Commissioner's motion to affirm the decision of the ALJ (Docket Entry # 27) be **ALLOWED** and plaintiff's motion to reverse the decision be **DENIED** (Docket Entry # 23).

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[6]  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of the Report and Recommendation to which objection is made and accompanied by the basis for such objection.  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.  See Fed.R.Civ.P. 72.